# United States Court of Appeals for the Federal Circuit

---

**CERISE CHECO,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7059

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-3683.

---

Decided: April 23, 2014

---

MARK R. LIPPMAN, The Veterans Law Group, of La Jolla, California, argued for claimant-appellant.

TARA K. HOGAN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and MARTIE ADELMAN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

JAMES R. BARNEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, for amicus curiae. Of counsel on the brief was TERENCE STEWART, Stewart & Stewart of Washington, DC. Of counsel was KEVIN D. RODKEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Atlanta, Georgia.

_____

Before PROST, MAYER, and CHEN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST.

Opinion dissenting-in-part filed by *Circuit Judge* MAYER.

PROST, *Circuit Judge*.

This is an appeal from the United States Court of Appeals for Veterans Claims ("Veterans Court"). Cerise Checo initially sought an increased disability rating for a back injury, which the Board of Veterans' Appeals denied on July 6, 2011. However, Ms. Checo was homeless and unable to obtain mail until October 6, 2011, when she finally received a copy of the adverse decision. She eventually filed her Notice of Appeal ("NOA") 33 days late. The Veterans Court concluded that Ms. Checo's NOA was untimely and that she failed to show why her homelessness warranted equitable tolling. *See Checo v. Shinseki*, 26 Vet. App. 130, 135 (2013).

We conclude that the Veterans Court (1) used an inappropriate due diligence standard; and (2) erred in determining that Ms. Checo's homelessness did not cause a 91-day delay in her filing. Therefore, we vacate the Veterans Court's dismissal of Ms. Checo's appeal and remand this case for further proceedings.

## I. BACKGROUND AND PROCEDURAL HISTORY

Ms. Checo initially filed a claim seeking an increased disability rating for lumbosacral spinal stenosis, including disk bulges at the L3-L4 and L5-S1 vertebrae, which is

currently rated at a 20% disability. On July 6, 2011, the Board of Veterans' Appeals issued a decision denying her request. Ms. Checo was homeless at that time, residing in shelters and temporary housing without the ability to receive mail. On September 27, 2011, Ms. Checo contacted the Department of Veterans Affairs ("VA") to provide a new address, and she received a copy of the adverse decision on October 6, 2011—after 91 days of the 120-day filing period under 38 U.S.C. § 7266 had passed. On December 7, 2011, Ms. Checo filed an NOA of the decision, 33 days after the expiration of the 120-day period. In the NOA, she wrote: "Due to economic hardship, I've been homeless for extensive periods of time since July 2009, residing in shelters and temporary housing. During this time, I was unable to receive mail and did not learn about the hearing and subsequent decision until" a copy of the decision was mailed to her in October 2011. J.A. 9.

Under *Bove v. Shinseki*, the Clerk of the Veterans Court may identify late appeals and issue show cause orders for why these appeals should not be dismissed. *See* 25 Vet. App. 136, 140-43 (2011). Pursuant to this policy and before any substantive briefing occurred, the Clerk of the Veterans Court ordered the Secretary to file a response discussing whether the circumstances in Ms. Checo's case warranted the equitable tolling of the 120-day judicial appeal period.[1]

In its response, the Secretary noted that "it appears that [Ms. Checo's] homelessness was due to circumstances beyond her control." J.A. 20. The Secretary also stated

---

[1]  "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, No. 12-820, 2014 WL 838515, at *6 (U.S. Mar. 5, 2014).

that Ms. Checo's homelessness "would have delayed her filing of her NOA." *Id.* at 20-21.

After the Veterans Court accepted the Secretary's concession that Ms. Checo's homelessness qualified as an extraordinary circumstance, it ruled that Ms. Checo nonetheless failed to prove the two other necessary elements—due diligence and direct causation—to warrant equitable tolling. *See Checo*, 26 Vet. App. at 134-36. The Veterans Court then dismissed Ms. Checo's appeal. *Id.* at 136.

## II. Discussion

Ms. Checo challenges two aspects of the Veterans Court's order. First, she questions whether the Veterans Court acted within its authority when it raised the timeliness issue sua sponte under *Bove*. Second, Ms. Checo disputes the Veterans Court's conclusion that she is not entitled to equitable tolling. We address each of Ms. Checo's challenges in turn.

## A. The *Bove* Decision

As noted above, in *Bove v. Shinseki* the Veterans Court directed the Clerk of the Court to identify late appeals and issue show-cause orders for why these appeals should not be dismissed. 25 Vet. App. at 140-43. Ms. Checo and Amicus[2] both argue that *Bove,* which was never appealed to this court, should now be overruled. We have jurisdiction to review Veterans Court decisions concerning any challenge to an interpretation of a statute, regulation, or rule under 38 U.S.C. § 7292(a). *Cummings v. West*, 136 F.3d 1468, 1471 (Fed. Cir. 1998); *Cox v. West*, 149 F.3d 1360, 1362 (Fed. Cir. 1998) ("These questions of legal interpretation are clearly within our jurisdiction.").

---

[2]    The Federal Circuit Bar Association filed an amicus curiae brief in support of Ms. Checo.

"Such legal determinations of the Veterans Court are reviewed without deference." *Bingham v. Nicholson*, 421 F.3d 1346, 1348 (Fed. Cir. 2005) (citation omitted).

To begin her argument, Ms. Checo notes the distinction between non-jurisdictional time limitations, which are waivable, and jurisdictional limitations, which are not. *See, e.g., Eberhart v. United States*, 546 U.S. 12, 20-21 (2005) ("[C]laim-processing rules thus assure relief to a party properly raising them, but do not compel the same result if the party forfeits them"). She argues that here the Veterans Court's practice of raising timeliness issues on its own eliminates the opportunity for the Secretary to waive the right to challenge the non-jurisdictional appeal period limitation.

Ms. Checo also argues that if Congress had wanted § 7266(a) to be non-waivable, it would have done so. Instead, according to Ms. Checo, this Veterans Court procedure creates the appearance of bias against disabled veterans. *Cf. Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006) ("[I]t was for the purpose of ensuring that veterans were treated fairly by the government and to see that all veterans entitled to benefits received them that Congress provided for judicial review . . . .").

Next, Ms. Checo points out that judicial review of Veterans Board decisions is an adversarial process, so she contends that only the parties should present the issues. *See Bobbitt v. Principi*, 17 Vet. App. 547, 552 (2004) ("[F]iling an appeal to this Court is not an action within the 'non-adversarial, manifestly pro-claimant veterans' benefits system. Rather, [it] . . . is the first step in an adversarial process challenging the Secretary's decision on benefits.") (citation omitted).

Finally, Ms. Checo requests that we compare the Veterans Court to the Social Security disability program, as it has been called an analogous system. *Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. 1197, 1204 (2011). And

the Supreme Court has stated that the time period for filing an appeal for judicial review of a Social Security decision is waivable. *See Bowen v. New York*, 476 U.S. 467, 474 n.10 (1986).

We have considered all of Ms. Checo's arguments, but we do not find them persuasive. While Ms. Checo relies on several cases that distinguish non-jurisdictional and jurisdictional limitations, she fails to point to a single case that affirmatively states that the Veterans Court cannot raise sua sponte a non-jurisdictional limitation. Further, as the Government notes, the Supreme Court has permitted district courts to raise non-jurisdictional statute of limitations issues sua sponte. *See, e.g.*, *Day v. McDonough*, 547 U.S. 202, 209 (2006) ("In sum, we hold that district courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition.").[3]

Regarding Ms. Checo's arguments that Congress could have, and did not, make § 7266(a) unwaivable, we conclude that Congress nonetheless gave the Veterans Court broad discretion to prescribe, interpret, and apply

---

[3]    Ms. Checo attempts to discount the relevance of *Day*, arguing that in *Wood v. Milyard*, the Supreme Court referred to such habeas petition cases as "modest exception[s]" to the general forfeiture rule that "implicate[] values beyond the concerns of the parties." 132 S.Ct. 1826, 1832 (2012) (citation omitted). Additionally, Amicus claims that this decision advises appellate courts to use restraint in applying sua sponte review. However, *Wood* does not apply to this case; in *Wood* an appeals court dismissed a petition as untimely after the state waived the issue below. *Id.* at 1834. In contrast, here the Veterans Court notified the Secretary of the issue before it was required to file a pleading in the case, so a waiver never occurred.

its own rules. The Veterans Court uses that discretion here to require that a claimant file an NOA within the time allowed by law. *See* U.S. Vet. App. R. 38(b) (authorizing the Veterans Court to take "such action as the court deems appropriate, including dismissal of the appeal," when a party fails to comply with a rule of the Veterans Court).

Further, the fact that proceedings in the Veterans Court are adversarial does not prevent the Veterans Court from managing its cases, which it does by requiring its Clerk to identify late NOAs and issue show-cause orders before any substantive pleadings are filed. And we note that even when an NOA is untimely, the Veterans Court still considers whether equitable tolling applies, so this procedure does not create any unfair bias.

Finally, despite the similarities between Veterans Appeals and Social Security cases, we note that parties in Social Security cases are still subject to Federal Rule of Civil Procedure 8(c). This rule requires a party to state any affirmative defense in response to a pleading, so it makes sense in those cases to allow waiver of non-jurisdictional time limitations. But the Federal Rules of Civil Procedure do not apply to the appellate Veterans Court.

For the foregoing reasons, we see no reason at this time to overrule the holding in *Bove* that grants the Veterans Court authority to address untimely filings sua sponte.[4] We conclude that in this case the Veterans Court

---

[4] We need not consider the Veterans Court's separate holding in *Bove* that the 120-day appeal period is not a matter subject to waiver or forfeiture by the Secretary; in this case such waiver or forfeiture never occurred. *See* n.3, infra.

did not err by raising sua sponte the untimely appeal issue.

## B. Equitable Tolling

We next turn to whether the Veterans Court erred in ruling that Ms. Checo is not entitled to equitable tolling. As we stated previously, this court has jurisdiction to review the legal determinations of the Veterans Court under 38 U.S.C. § 7292. However, we may not review the Veterans Court's factual findings or its application of law to facts. *Singleton v. Shinseki*, 659 F.3d 1332, 1334 (Fed. Cir. 2011) (citing *Reizenstein v. Shinseki*, 583 F.3d 1331, 1334 (Fed. Cir. 2009)).

In order to benefit from equitable tolling, the Veterans Court has previously required a claimant to demonstrate three elements: (1) extraordinary circumstance; (2) due diligence; and (3) causation. *See McCreary v. Nicholson*, 19 Vet. App. 324, 332 (2005), *adhered to on reconsideration*, 20 Vet. App. 86 (2006). This is consistent with other jurisdictions and also with the guidance provided by the Supreme Court, and neither party challenges this test here. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies . . . . But the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.").

### 1. Extraordinary Circumstance

During oral argument at the Veterans Court, the Secretary acknowledged that it has conceded that Ms. Checo's homelessness qualifies as an extraordinary circumstance in this case. *See* J.A. 75. The Veterans Court

accepted this concession, and we agree.[5]  We therefore conclude that Ms. Checo has satisfied the extraordinary circumstance element.

## 2.  Due Diligence

In addition to an extraordinary circumstance, a party who seeks equitable tolling must also show due diligence. *See Irwin*, 498 U.S. at 96; *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011); *McCreary*, 19 Vet. App. at 327.  We

---

[5]    Throughout its briefing and during oral argument, the Secretary repeatedly told the Veterans Court that it was conceding the extraordinary circumstance element. Early in the argument, the Veterans Court indicated it was aware of this fact.  *See* J.A. 61 ("I believe the Secretary conceded that there was extraordinary circumstance . . . .").  Nonetheless, the Veterans Court spent the majority of the time during oral argument questioning both parties over whether that concession was appropriate and whether the Veterans Court needed to accept the Secretary's concession.  *See, e.g.,* J.A. 63-65, 71, 75-77, 81-85. The reason for the Veterans Court's reluctance to accept this concession is not apparent to us.  *See, e.g., United States v. Aviles-Solarzano*, 623 F.3d 470, 475 (7th Cir. 2010) ("Nothing is more common than for parties by stipulation formal or informal to agree to facts that, were it not for the stipulation, would have to be proved by evidence, in this case a judicial record."); *Ferguson v. Neighborhood Housing Servs.*, 780 F.2d 549, 551 (6th Cir. 1986) ("[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court.") (citation omitted); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968) ("The purpose of a judicial admission is that it acts as a substitute for evidence in that it does away with the need for evidence in regard to the subject matter of the judicial admission.") (citation omitted).

begin our inquiry by considering for which period Ms. Checo needed to show such due diligence—during the entire 120-day appeal, during the period of extraordinary circumstances (i.e., ending on October 6, 2011 when she received a copy of the decision[6]), during the period between the end of the extraordinary circumstances and the date of filing the NOA (i.e., between October 6, 2011 and December 7, 2011), or during some other period.[7]

Although this is an issue of first impression in this court, we find the Second Circuit's analysis in *Harper v. Ercole* persuasive. *See* 648 F.3d at 139. There, the Second Circuit concluded that due diligence must only be shown during the requested tolling period, which can occur at any time during the statutory period. *Id.* The Second Circuit explained that "[a] court may suspend the statute of limitations for the period of extraordinary circumstances and determine timeliness by reference to

---

[6]    At oral argument before the Veterans Court, the Secretary suggested that September 27, 2011—the date when Ms. Checo contacted the VA and requested a mailing of the adverse decision—should mark the end of the extraordinary circumstance period. J.A. 78-79. However, on appeal the government has not contested Ms. Checo's assertion that October 6, 2011 marks the end of the period. We note that whether September 27, 2011 or October 6, 2011 is the end date of the extraordinary circumstance period is not relevant to this case. Therefore, we will adopt Ms. Checo's October 6, 2011 date as the end of the extraordinary circumstance period.

[7]    Although the Veterans Court declined to address this issue, *see Checo*, 26 Vet. App. at 134-35, we have jurisdiction to decide the question. *Linville v. West,* 165 F.3d 1382, 1384 (Fed. Cir. 1990) (stating that arguments which were ignored or rejected sub silentio by Veterans Court can still be reviewed on appeal).

the total untolled period without requiring a further showing of diligence through filing." *Id.* The parties refer to this in their briefing as the "stop-clock" approach because the clock measuring the 120-day appeal period is "stopped" during the extraordinary circumstance period and starts ticking again only when the period is over. As applied to this case, the stop-clock approach would mean that the appeal period was suspended between July 7, 2011 and October 6, 2011, and we would only need to consider whether Ms. Checo has shown diligence during that time.

The Veterans Court, however, has previously required a showing of due diligence throughout the entire appeal period. *See McCreary*, 19 Vet. App. at 333. In that case, the extraordinary circumstance came in the form of a hurricane; due to the storm, the claimant misplaced his appeal papers. *Id.* The Veterans Court found that the claimant could have found and filed his papers at some unspecified time before the expiration of the limitations period despite the hurricane. *See id.* at 333-34. As applied to this case, the *McCreary* standard would require us to examine whether Ms. Checo showed due diligence from July 7, 2011 (the beginning of the 120-day appeal period) until December 7, 2011 (the date that she filed her NOA).

Ms. Checo argues that the stop-clock approach should apply in this case, making the relevant due diligence period the 91 days that she was homeless between July 7, 2011 and October 6, 2011, with the entire 120-day appeal period starting to run upon her receipt of the adverse decision. She claims that the stop-clock approach applies when the extraordinary circumstance period has a definite end date for equitable tolling. Here, that definite end date is October 6, 2011, marking the end of her homelessness. She argues that the *McCreary* standard is a fallback approach, one that is to be used only when the extraordinary circumstance period has no end date, such

as the recovery period after a hurricane. During oral argument before the Veterans Court, the Secretary agreed that the stop-clock approach would be appropriate in Ms. Checo's case. *See* J.A. 79 ("[T]he Secretary does not contest that the court should use the stop-clock approach."); *see also* Oral Arg. Tr. 28:20-28 ("Before the Veterans Court the Secretary conceded that it did not have a problem with the stop-clock approach.").

We agree with both parties and adopt the stop-clock approach. As a result, we conclude that Ms. Checo must only demonstrate due diligence during the extraordinary circumstance period, which began on July 7, 2011 and ended on October 6, 2011. And if she is successful in demonstrating both due diligence and causation during this time period,[8] under the stop-clock approach the appeal clock would begin to run on October 6, 2011, making her NOA (filed on December 7, 2011) timely.[9]

Below, Ms. Checo explained to the Veterans Court in her NOA that while she was homeless she "was unable to receive mail and did not learn about the hearing and subsequent decision until" October 6, 2011. J.A. 9. The Veterans Court nonetheless concluded not only that Ms. Checo had failed to prove due diligence but also that she "failed to even *assert* that she acted diligently." *Checo,* 26 Vet. App. at 135 (emphasis added). The Government argues that this factual finding is not subject to review by our court and that we must therefore uphold the Veterans Court's determination that the statute should not be equitably tolled.

Although we may not review the Veterans Court's factual findings, we may review whether the Veterans Court

---

[8]    S*ee* Section II.B.3, infra.

[9]    Indeed, Ms. Checo would have had 120 days after October 6, 2011 to file her NOA.

erred as a matter of law in using an improper standard of due diligence for Ms. Checo. *See* 38 U.S.C. § 7292(a). The Supreme Court has stated that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Florida*, 560 U.S. 631, 653 (2010) (citations and internal quotation marks omitted).

However, we lack sufficient information to even determine what diligence standard the Veterans Court used in concluding that Ms. Checo had not met her burden. We note that during oral argument before the Veterans Court, the Secretary suggested that Ms. Checo should have "sought general delivery of [her] mail knowing that there was an outstanding Board decision or an appeal pending before the Board." J.A. 77. But such action was impossible for Ms. Checo, as she stated that she was "unable to receive mail," so she had no new address to provide until September 27, 2011, when she contacted the VA. J.A. 2, 9. The Secretary did not challenge the veracity of that assertion.

The Veterans Court stated that Ms. Checo should have "cited . . . actions that she took during [the period of time sought to be tolled] . . . that would tend to prove such diligence in pursuing her appeal." *Checo,* 26 Vet. App. at 135. But it remains unclear what further actions she needed to specifically cite to support her claim that she acted diligently. Indeed, during oral argument in our court, the Government's counsel expressed "hesitat[ion] to put out factors as to what she could have done or should have done." Oral Arg. Tr. 16:40-48; *see also id.* at 31:14-25 ("Q: Would the government feel that it was necessary to [challenge] a statement that said "I tried my best"? A: I think that is a very difficult question."). Since we do not know what would have been necessary to prove due diligence to the Veterans Court, we are unable to evaluate whether it used too high of a due diligence standard.

We therefore remand Ms. Checo's case back to the Veterans Court so that it may clarify and apply an appropriate due diligence standard to the facts of Ms. Checo's case as well as engage in further fact finding as necessary.

### 3. Causation

Below, the Veterans Court "emphasize[d] that Ms. Checo failed to provide *any* facts to support a finding of direct causation between her homelessness and her failure to file her [NOA] within the 120-day judicial appeal period." *Checo*, 26 Vet. App. at 134. Thus, the Veterans Court concluded that Ms. Checo had not carried her burden. *Id.*

We conclude that this was a legal error, as the Veterans Court used the wrong test for causation. The Veterans Court required Ms. Checo to prove why her homelessness caused her inability to file the NOA within the 120-day appeal period, but as discussed above in Section II.B.2, under the stop-clock approach Ms. Checo only needed to demonstrate causation between her homelessness and the period she sought to be tolled (i.e., the 91-day period). *See generally Harper*, 648 F.3d at 137-38.

In her NOA, Ms. Checo explained that while she was homeless, she was "unable to receive mail and did not learn about the hearing and subsequent decision until" a copy of the decision was mailed to her on October 6, 2011, marking the end of the 91-day period she now seeks to toll. J.A. 9. Thus, although Ms. Checo failed to explain why her homelessness caused a delay between October 6, 2011 and the end of the appeal period, she did indeed explain why her homelessness caused a delay during the 91-day period.

Further, in its response to the Veterans Court's initial request that the Secretary discuss whether the circumstances in Ms. Checo's case warranted equitable tolling,

the Secretary stated that Ms. Checo's homelessness "would have delayed her filing of her NOA." J.A. 20-21. Ms. Checo argues that this statement is a concession that her homelessness caused a 91-day delay. The Government disagrees with Ms. Checo's interpretation. However, we need not decide whether or not this statement was a concession; even if it was not, the statement still provides further support for our conclusion that Ms. Checo has demonstrated that her homelessness caused a 91-day delay in filing.

## III. CONCLUSION

For the foregoing reasons, we hold that the Veterans Court did not err in following its own procedure, outlined in *Bove*, and raising sua sponte the timeliness issue. However, we conclude that the Veterans Court did err in determining that Ms. Checo had not shown due diligence or causation to support her equitable tolling claim. We reverse the Veterans Court's determination that she failed to show causation and vacate the Veterans Court's determination that she failed to show due diligence. We remand this case back to the Veterans Court for further consideration consistent with this opinion.

**REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

---

**CERISE CHECO,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7059

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-3683.

---

MAYER, *Circuit Judge*, dissenting-in-part.

I agree that the United States Court of Appeals for Veterans Claims ("Veterans Court") erred in failing to apply the "stop-clock" approach to equitable tolling and in dismissing Cherise Checo's appeal as untimely. I disagree, however, with the conclusion that the Veterans Court has the authority to routinely raise, on its own initiative, the statute of limitations defense on behalf of the Secretary of Veterans Affairs ("Secretary"). "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). The

Veterans Court's regular practice of addressing, *sua sponte*, the question of whether a veteran's appeal is timely filed is contrary to the Supreme Court's admonition that a court should independently consider a statute of limitations defense only "in exceptional cases." *Wood v. Milyard*, 132 S. Ct. 1826, 1834 (2012). Regularly raising an affirmative defense on behalf of the Secretary creates the appearance that the court functions not as a "neutral arbiter," *Greenlaw*, 554 U.S. at 243, but instead as a mere appendage of the Department of Veterans Affairs ("VA"), as even the Veterans Court once recognized. *See MacWhorter v. Derwinski*, 2 Vet. App. 133, 135 (1992) ("[F]erreting out . . . implicit or possible contentions" on behalf of the Secretary "would be the antithesis of the adversarial judicial appellate process."); *see also Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998) ("[I]n the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weight.").

Of course, some filing deadlines are jurisdictional. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-39 (2008) ("*Sand & Gravel*") (concluding that compliance with the time limit for filing suit in the United States Court of Federal Claims is a jurisdictional requirement); *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (concluding that the time limit for appealing from a district court to a court of appeals is "mandatory and jurisdictional" (citations and internal quotation marks omitted)). Because "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction," they are required to assure compliance with jurisdictional filing deadlines, even in situations in which the timeliness question has not been raised by the parties. *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011); *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006*)* ("The objection that a federal court

lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." (citation omitted)).

But other filing deadlines are "claims-processing rules" which do not limit a court's jurisdiction. *Dolan v. United States*, 560 U.S. 605, 610 (2010). Because such claims-processing rules only afford relief to the party properly raising them, they can be waived or forfeited. *See id.* ("Unless a party points out to the court that another litigant has missed [a non-jurisdictional] deadline, the party forfeits the deadline's protection."); *Sand & Gravel*, 552 U.S. at 133 ("[T]he law typically treats a limitations defense as an affirmative defense . . . subject to rules of forfeiture and waiver."). Furthermore, while an appellate court has discretion to address a non-jurisdictional limitations defense on its own initiative, it "should reserve that authority for use in exceptional cases," *Wood*, 132 S. Ct. at 1834, which surely would not include the situation here or, for example, when a veteran has an incapacitating injury or illness.

The 120-day time limit for appealing to the Veterans Court set out in 38 U.S.C. § 7266(a) is not a jurisdictional prerequisite, but is instead a "quintessential claim-processing rule[]." *Henderson*, 131 S. Ct. at 1203. Accordingly, the Veterans Court erred when it: (1) concluded that the statute of limitations defense could not be waived by the Secretary; and (2) directed its clerk of court to screen all appeals for timeliness and to issue show cause orders requiring veterans to demonstrate why any appeal filed outside the 120-day filing period should not be dismissed. *See Bove v. Shinseki*, 25 Vet. App. 136, 140-43 (2011). "[A] federal court does not have *carte blanche* to depart from the principle of party presentation basic to our adversary system." *Wood*, 132 S. Ct. at 1833. Instead, the Supreme Court has repeatedly cautioned that a court can *sua sponte* address an affirmative defense only

in a narrow set of circumstances. *See id.* at 1834 (concluding that an appellate court abused its discretion by raising a timeliness defense on its own initiative); *Greenlaw*, 554 U.S. at 244 (Because our justice "system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief," courts "normally decide only questions presented by the parties." (citations and internal quotation marks omitted)); *Arizona v. California*, 530 U.S. 392, 413 (2000) (Because it "erod[es] the principle of party presentation so basic to our system of adjudication," courts must be "cautious" about raising an affirmative defense *sua sponte.*). *Day v. McDonough*, 547 U.S. 198, 206-10 (2006), relied upon by the Veterans Court, is not to the contrary. As the Supreme Court explained in *Wood*, *Day* stands for the limited proposition that a court has discretion "to consider a forfeited habeas defense when *extraordinary circumstances* so warrant." 132 S. Ct. at 1833 (emphasis added).

No extraordinary circumstances justify the Veterans Court's regular practice of raising the question of whether a veteran's appeal was timely filed. In *Bove,* the Veterans Court concluded that *sua sponte* consideration of the timeliness issue in every appeal submitted outside the 120-day filing period is required because "hold[ing] that the Secretary could affirmatively or by forfeiture waive the 120-day filing period would cede some control of the Court's docket to the Secretary and permit arbitrary selection of which veteran's late filing he finds worthy of waiver, a process devoid of consistency, procedural regularity, and effective judicial review." *Bove*, 25 Vet. App. at 141.* The Veterans Court, however, provided no factual

---

* The Veterans Court also stated that the goal of promoting "judicial efficiency" justified requiring its clerk of court to screen all appeals for timeliness. *Bove*, 25 Vet.

support for its rather far-fetched contention that the Secretary might attempt to gain "control" over its docket. Nor could the court cite to a single instance in which the Secretary made an "arbitrary" decision to forego reliance on a timeliness defense in order to defend an appeal on the merits. To the contrary, the Secretary typically has every incentive to promptly raise a statute of limitations defense given that it can frequently provide an expeditious means of resolving an appeal. *See Eberhart v. United States*, 546 U.S. 12, 18 (2005) (noting that "the Government is unlikely to miss timeliness defects very often"). In the rare instances in which the Secretary elects not to pursue a statute of limitations defense—or simply inadvertently fails to raise it—there is no reason that the defense should not be deemed waived. *See Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) ("[A] claim-processing rule . . . can . . . be forfeited if the party asserting the rule waits too long to raise the point.").

The Veterans Court's practice of *sua sponte* addressing the timeliness issue is particularly troubling given that the court functions as part of a uniquely pro-claimant adjudicatory scheme. *See Henderson*, 131 S. Ct. at 1205 ("The solicitude of Congress for veterans is of long stand-

---

App. at 142. The court failed to cite any evidence, however, that requiring its clerk to raise the timeliness issue—as opposed to allowing the Secretary to raise it—would significantly expedite the processing of appeals. Even more fundamentally, "[a]ny interest that a court generally possesses in the enforcement of a statute of limitations defense . . . ordinarily falls short of that necessary to outweigh the benefits derived from adhering to the adversarial process, and requiring that a defendant either raise the defense of statute of limitations or waive its protection." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (footnote omitted).

ing. And that solicitude is plainly reflected in the [Veterans' Judicial Review Act], as well as in subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." (citations and internal quotation marks omitted)). "[I]t was for the purpose of ensuring that veterans were treated fairly by the government and to see that all veterans entitled to benefits received them that Congress provided for judicial review." *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006). The Veterans Court's practice of routinely raising an affirmative defense on behalf of the Secretary is wholly out of place in an adjudicatory system intended by Congress to be "unusually protective of claimants." *Henderson*, 131 S. Ct. at 1204 (citations and internal quotation marks omitted).

Many veterans who seek redress from the Veterans Court suffer from significant service-connected physical and psychiatric disabilities. *See Dixon v. Shinseki*, 741 F.3d 1367, 1376 (Fed. Cir. 2014). Such veterans, moreover, are often unrepresented when they file their notices of appeal. *See id.* The Secretary, by contrast, is represented by a regiment of skilled and experienced attorneys. Given that the Secretary generally has a clear advantage—in terms of resources and experience—it defies understanding why the Veterans Court believes it necessary to routinely raise the timeliness defense on his behalf. *See Greenlaw*, 554 U.S. at 244 ("Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before us." (citations and internal quotation marks omitted)).

"The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." *United States v. Burke*, 504 U.S. 229, 246

(1992) (Scalia, J., concurring in the judgment). Before 1988, veterans who were denied disability compensation generally had no recourse to the courts. *See* H.R. Rep. No. 100-963, at 26 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5808. The goal of Congress in creating the Veterans Court was to provide review by a tribunal "independent" of the VA. *Id.* This objective is frustrated when the Veterans Court steps into the shoes of the Secretary and routinely raises an affirmative defense on his behalf.