# United States Court of Appeals for the Federal Circuit

---

**K. G.,**

*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

*Respondent-Appellee*

---

2019-1690

---

Appeal from the United States Court of Federal Claims in No. 1:18-vv-00120-MCW, Senior Judge Mary Ellen Coster Williams.

---

Decided: March 6, 2020

---

ZACHARY J. HERMSEN, Whitfield & Eddy, PLC, Des Moines, IA, argued for petitioner-appellant.

VORIS EDWARD JOHNSON, JR., Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JOSEPH H. HUNT, C. SALVATORE D'ALESSIO, HEATHER LYNN PEARLMAN, CATHARINE E. REEVES.

---

Before DYK, O'MALLEY, and STOLL, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

In Fall 2011, K.G. received a seasonal influenza vaccination in advance of a total knee replacement surgery. Over the next several months, she experienced increasingly severe nerve pain in her hands, arms, feet, and legs. During the same period, K.G. succumbed to alcoholism, spent months in the hospital, and developed amnesia. In Spring 2014, an Iowa state court declared K.G. incapable of caring for herself and, against K.G.'s will, appointed K.G.'s sister as her guardian.

K.G. made a slow recovery and regained her mental faculties by May 2016. Shortly thereafter, she retained an attorney who filed a claim on her behalf pursuant to the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. § 300aa-1 et seq. Without reaching the merits of K.G.'s claim, the Special Master held that equitable tolling was not available during the period that K.G.'s sister was appointed as K.G.'s guardian and dismissed K.G.'s claim as not timely filed within the three-year statute of limitations. *See K.G. v. Sec'y of Health & Human Servs.*, No. 18-120V, 2018 WL 5795834 (Fed. Cl. Aug. 17, 2018). The Court of Federal Claims ("Claims Court") affirmed. *K.G. v. Sec'y of Health & Human Servs.*, 142 Fed. Cl. 240 (2019).

Arguing that she should not be barred from the benefit of equitable tolling merely because she was involuntarily placed under guardianship, K.G. appeals. For the reasons stated below, we hold that equitable tolling is available in Vaccine Act cases and that the appointment of a legal guardian is only one factor a court should consider when deciding whether equitable tolling is appropriate in a particular case. We therefore vacate and remand.

## I

K.G. was forty-eight years old when she received an influenza vaccination in October 2011, as a precautionary measure in advance of a bilateral total knee replacement. She was a licensed accountant and the sole income-earner for her family of four.

After the knee replacement surgery, which occurred in November 2011, K.G. began noticing numbness in her right leg. In February 2012, K.G.'s doctor proposed testing to determine if she had neuropathy or nerve injury. By May 2012, K.G. was experiencing numbness, tingling, and burning in her legs and feet, as well as abnormal sensation in her fingers. These symptoms worsened over the next several months. Concurrently, K.G.'s mental health began to decline. She began taking pain medication and drinking heavily.

Beginning in November 2012, K.G. was hospitalized for two months after a fall. She was released to her home in January 2013. Her discharge papers indicated a diagnosis of Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP").

K.G. remained at home for about five months. During that time, she would regularly isolate herself from family and drink substantial amounts of alcohol. In May 2013, K.G.'s son found K.G. unresponsive at her home. She was taken to the hospital for a second time. On admission, K.G.'s memory and ability to follow commands were highly impaired. Over the next month, K.G remained confused about where she was—at various points thinking she was on a cruise, in Las Vegas, or at home. K.G. was discharged to an in-patient facility in June 2013, where she remained for over three years.

In October 2013, a psychiatrist diagnosed K.G. with Korsakoff's amnesia,[1] anxiety, and depression.   Given K.G.'s lack of capacity, K.G.'s family eventually decided the best course was to place K.G. under guardianship and conservatorship.  An Iowa district court appointed K.G.'s sister as K.G.'s guardian and conservator in March 2014.

During the course of the guardianship, K.G. blamed her sister for many of her problems and the sisters' relationship deteriorated.  At various points, K.G. told her therapist that she felt like a "prisoner" because her sister would never let her leave the nursing facility, that her sister was alienating K.G. from her children, and that her sister was responsible for all of her issues.  J.A. at 338, 340. In a sworn statement, K.G's sister explained the difficulty of the situation:

> My appointment as guardian and conservator strained my relationship with K.G.  K.G. believed that I was solely responsible for K.G. living at a nursing home, among other things.  We did our best to make K.G.'s life tolerable. . . . However, K.G. was still upset with me, and she still refuses to talk to me today.  This strain on our relationship is why I eventually stopped acting as K.G.'s guardian and conservator.  It became too much for me to personally handle.

*Id.* at 385, ¶ 24.

In May 2016, K.G. began to show cognitive improvement.  The Iowa court terminated K.G.'s guardianship and conservatorship in August 2016.  K.G. thereafter returned home to live with her husband.

---

[1]    A condition caused by thiamine deficiency that can result from alcoholism, among other things.

K.G. consulted with counsel in late 2017 who filed a Petition for Vaccine Compensation in January 2018. She alleged that her October 2011 flu shot caused her to develop neuropathy.

In March 2018, the Special Master questioned the timeliness of the Petition and allowed the parties to brief the issue of equitable tolling. The Vaccine Act's statute of limitations is three years. 42 U.S.C. § 300aa-16(a)(2). K.G. argued that she was mentally incapacitated from November 9, 2012, the date her first post-surgery hospital stay began, to May 10, 2016, when she began showing signs of cognitive improvement. According to K.G., this period of incapacity should not count in calculating whether her claim is timely filed. The Secretary of Health and Human Services ("the government") responded with three counter-arguments: (1) equitable tolling based on mental incapacity is not available under the Vaccine Act at all; (2) K.G.'s proposed period was too long and a reasonable period, considering only time when K.G. was not under guardianship, would render K.G.'s claim untimely; and (3) tolling was improper because late-filing was not a direct result of K.G.'s mental incapacity.

The Special Master dismissed the case as untimely on August 17, 2018. *K.G.*, 2018 WL 5795834 at *12. He declined to resolve or comment on whether it was appropriate to equitably toll in the Vaccine Act context based on mental incapacity. Instead, he found that K.G.'s claim was untimely even assuming equitable tolling was available. *Id.* at *8.

The Special Master found that K.G. suffered from CIDP. *Id.* He further found that the onset of K.G.'s condition, the date on which the statute of limitations began to run, was in mid-February 2012 when her doctors first suggested testing for neuropathy. *Id.* He then rejected K.G.'s argument that equitable tolling, if available, began in November 2012, when K.G. was first admitted to the hospital.

*Id.* at *9.  The Special Master found that K.G.'s second hospital trip, which began in May 2013, marked the beginning of her mental incapacity and the start of the tolling period. *Id.*  He reasoned that the record evidence established only that K.G.'s mental health was a concern in November 2012, not that she was fully incapacitated.  *Id.*

The Special Master next determined that the appointment of K.G.'s sister as guardian in March 2014 restarted the clock.  *Id.*  He reasoned that K.G.'s sister was empowered to act on K.G.'s behalf under Iowa law.  *Id.*  With the clock restarting in March 2014, the Vaccine Act's three-year statute of limitations would have expired in December 2015.  *Id.* at *10.  Since the claim was not filed until January 2018, the Special Master found it was untimely.  *Id.*

The Special Master further found that broad equitable considerations did not favor tolling in K.G.'s case.  *Id.* at *10–11.  He found, "Petitioner and/or her legal representative did not act diligently in exercising her legal rights." *Id.* at *10.  He then explained that K.G. had capacity to bring a claim for over a year prior to the onset of her mental disability and for over a year after the mental disability resolved.  *Id.*  He found that K.G.'s inaction during those periods did not constitute diligence and weighed against equitable tolling.  *Id.*

K.G. appealed the Special Master's decision to the Claims Court.  On March 6, 2019, the Claims Court sustained the Special Master's decision.  *K.G.*, 142 Fed. Cl. at 246.

The Claims Court explained that the Vaccine Act grants a legal representative the statutory right to bring a claim on behalf of a disabled person who suffered a vaccine-related injury.  *Id.* at 244 (citing 42 U.S.C. § 300aa-11(b)(1)(A)).  Thus, the Claims Court reasoned that, under the Act, a disabled person's legal representative must file a claim within the 36-month limitations period.  *Id.* at 245–46.  Given this scheme, the Claims Court

concluded that the appointment of K.G.'s sister as a legal guardian alleviated any "extraordinary circumstance" that would warrant equitable tolling. *Id.*

Finally, the Claims Court rejected K.G.'s argument that her deteriorated relationship with her sister presented a separate extraordinary circumstance warranting tolling. *Id.* at 246. It reasoned that the Vaccine Act anticipates that many injured claimants will be unable to assist with their claims, as most claimants are children. *Id.*

K.G. appeals. We have jurisdiction pursuant to 42 U.S.C. § 300aa-12(f).

## II

In Vaccine Act cases, we review an appeal from the Claims Court *de novo*, applying the same standard of review that the Claims Court applied to the special master's decision. *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010) (citing *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000)). We owe no deference to the trial court or the special master on questions of law. With respect to factual findings, however, we will uphold the special master's findings of fact unless they are clearly erroneous. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). Therefore, "although we are reviewing as a matter of law the decision of the Court of Federal Claims under a non-deferential standard, we are in effect reviewing the decision of the special master under the deferential [arbitrary] and capricious standard on factual issues." *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010) (quoting *Lampe*, 219 F.3d at 1369)).

## A

A claimant must prove two elements to establish that equitable tolling of a statute of limitations is appropriate: (1) she pursued her rights diligently, and (2) an

extraordinary circumstance prevented her from timely filing the claim. *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 755 (2016). A claimant need only establish diligence during the period of extraordinary circumstances to meet this test. *Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014).

The government argues, as an initial matter, that, on appeal, K.G. fails to challenge the Special Master's factual finding of inadequate diligence. Appellee's Br. 31–32. Thus, the government argues, any challenge to that factual finding is waived. *Id.* K.G. responds that her entire appeal is a challenge to the Special Master's finding that K.G.'s legal representative did not exercise diligence. Appellant's Reply Br. 16. Moreover, K.G. argues that the lengthy background section of her brief clearly outlines the many hardships that prevented her from bringing a claim earlier. *Id.* at 16–17.

We agree with K.G. that she preserved the issue. K.G.'s entire opening brief addresses why equitable tolling should have been available in her case because the circumstances during her mental incapacity prevented her and her guardian from bringing a claim. In his diligence analysis, the Special Master placed special weight on the period before K.G. lost mental capacity and the period after K.G. regained capacity. *K.G.*, 2018 WL 5795834, at *10. But we have held that the only relevant period for determining the availability of equitable tolling is the extraordinary circumstances period, here, K.G.'s period of mental incapacity. *Checo*, 748 F.3d at 1380. K.G. was not required to argue the legally irrelevant question of whether she personally was diligent while she was mentally competent. And she clearly preserved her argument that her legal representative exercised reasonable diligence under the circumstances.

B

The government next argues that equitable tolling for mental incompetence is unavailable in the context of the Vaccine Act. The Vaccine Act's statute of limitations provides, in relevant part, "no petition may be filed for compensation under the Program for [a vaccine related] injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset . . . of such injury." 42 U.S.C. § 300aa-16(a)(2). We have held that a court may equitably toll the Vaccine Act's limitations period. *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1344 (Fed. Cir. 2011) (en banc). Such tolling is available, for example, when a claimant is a victim of fraud or duress. *Id.* Lack of knowledge of an actionable claim is not, however, a basis for equitable tolling. *Id.* at 1344–45.

Although we have not previously addressed whether equitable tolling based on mental incapacity is available under the Vaccine Act, we have found mental incapacity is a sufficient basis for equitable tolling in the veterans' benefits context. *Barrett v. Principi*, 363 F.3d 1316, 1318 (Fed. Cir. 2004). There, we "join[ed] the majority of our sister circuits in concluding that mental illness can justify equitable tolling." *Id.* We also noted that the context of the veterans' benefit system supported allowing equitable tolling based on mental illness. *Id.* at 1320. Thus, consistent with other circuits, we adopted "generalized standards" for applying equitable tolling:

> [T]o obtain the benefit of equitable tolling, a veteran must show that the failure to file was the direct result of a mental illness that rendered him incapable of "rational thought or deliberate decision making," or "incapable of handling [his] own affairs or unable to function [in] society." A medical diagnosis alone or vague assertions of mental problems will not suffice. And, if he is represented by counsel during the relevant period, the veteran

must make an additional showing that the mental illness impaired the attorney-client relationship.

*Id.* at 1321 (citations omitted).

*Barrett*'s holding was not limited to the veterans' benefits context. Instead, *Barrett* endorsed the position that mental incapacity is a basis for equitable tolling in any context—a position with which the majority of circuits agree. *Id.* at 1318. Moreover, in granting the veteran the requested relief in *Barrett*, we identified several other factors that provided additional support for equitable tolling in a case involving mental incapacity. Specifically, we found compelling the pro-claimant nature of the scheme and the fact that a veteran's mental incapacity is often related to his service. *Id.* at 1320. Similar factors are present here. The Vaccine Act is a pro-claimant regime meant to allow injured individuals a fair and fast path to compensation, *see Cloer*, 654 F.3d at 1325, and Vaccine Act claimants' mental incapacity is often related to their vaccinations. Thus, we begin our analysis of the availability of equitable tolling based on mental incapacity in the Vaccine Act context with a rebuttable presumption that it is available. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (holding that there is a rebuttable presumption that equitable tolling is available in suits against the government).

The government argues that equitable tolling based on mental incapacity is not available to Vaccine Act claimants because the Vaccine Act provides an accommodation for such a situation. Appellee's Br. 12–26. The government points to Section 11(b)(1)(A), the portion of the Vaccine Act describing who has standing to bring a claim, which permits a legal representative of a disabled person to file a petition for compensation. 42 U.S.C. § 300aa-11(b)(1)(A). A legal representative is "a parent or an individual who qualifies as a legal guardian under State law." 42 U.S.C. § 300aa-33(2). The government argues that the Vaccine Act's express inclusion of legal representatives among the

individuals with a right to bring a claim indicates that Congress intentionally did not account for mentally incompetent individuals in the limitations period. Appellee's Br. 14–15. The government further argues that Congress's intent is evident because it did not accommodate individuals with brain injuries, which are included in the Vaccine Act Injury Table, 42 U.S.C. § 300aa-14, and often result in serious cognitive impairment, in the statute of limitations. *Id.* at 15–16.

Congress's failure to accommodate mentally incompetent individuals in the statute of limitations does not evidence an intent sufficient to overcome the rebuttable presumption that tolling is available. Equitable tolling exists in instances where Congress fails to expressly accommodate in the statute of limitations those individuals who equitably deserve additional time to file. Ordinarily unremarkable provisions of the Vaccine Act, such as the section specifying who may bring a claim and the Vaccine Injury Table, do not negate the presumption that equitable tolling is available for mentally incompetent individuals. Such provisions do nothing to tell the courts that Congress considered the specific issue of equitable tolling under these circumstances, much less what Congress's view was on the issue. Thus, we hold that equitable tolling on the basis of mental incompetence is available in Vaccine Act cases.

C

The government further argues that the Special Master correctly determined that the equitable tolling period ended in March 2014 upon the appointment of K.G.'s sister as guardian. Appellee's Br. 26. The Claims Court explained that, once K.G.'s sister was appointed legal guardian, the extraordinary circumstance facing K.G. was lifted and there was "no longer any impediment preventing Petitioner from suing." *K.G.*, 142 Fed. Cl. at 245. The government notes that there is no evidence that K.G.'s sister neglected her duties as court-appointed guardian.

Appellee's Br. 27–28.  K.G. argues that the Claims Court and Special Master ignored the circumstances that prevented K.G.'s sister from making a claim, instead adopting an impermissible per se rule.  Appellant's Opening Br. 53–59.

The fact that the Vaccine Act expressly allows a legal guardian to bring a claim on a claimant's behalf does not foreclose the availability of equitable tolling for claimants with mental illness.  Parents and legal guardians can ordinarily bring claims on behalf of their wards.  *See, e.g.*, Fed. R. Civ. P. 17(c)(1); *see also Sullivan v. Chattanooga Med. Inv'rs, LP*, 221 S.W.3d 506, 513 (Tenn. 2007) (discussing the majority position among states that the appointment of a legal guardian does not remove a disability for purposes of tolling a statute of limitations).  Thus, Congress's decision to allow guardians to bring claims is unremarkable— a mere codification of common practice.  We therefore do not construe the provision of the Vaccine Act that allows legal guardians to bring claims on behalf of petitioners as a bar to equitable tolling.  Accordingly, we find that the Special Master erred in adopting a per se rule and considering only whether K.G. had a legal guardian.  He should have instead analyzed the facts to determine whether K.G.'s legal guardianship alleviated the extraordinary circumstance of her mental illness.

We hold that the proper analysis of equitable tolling based on mental incapacity in the Vaccine Act context must consider both extraordinary circumstances and diligence. To show extraordinary circumstances, as in the veterans' benefits context, a Vaccine Act claimant must show that her failure to file was the direct result of a mental illness or disability that rendered her incapable of rational thought, incapable of deliberate decision making, incapable of handling her own affairs, or unable to function in society.  A medical diagnosis alone or vague assertions of mental problems are insufficient.  *See Barrett*, 363 F.3d at 1321.

Likewise, the reasonable diligence inquiry must also be based on a consideration of all relevant facts and circumstances. *See Menominee Indian Tribe*, 136 S. Ct. at 755. It is possible, for instance, that a reasonable amount of diligence for an individual with memory loss or hallucinations would equate to no diligence for an able-minded individual. That a mentally incapacitated individual has a legal representative is just one of many factors that may further inform the diligence inquiry. The significance of a legal guardian may depend on a number of factors, including: the nature and sophistication of the guardian (parent, lawyer, family member, or third-party), the timing of the institution of the guardianship (before or after the vaccination, for example), the nature of the guardian's rights and obligations under state law, the extent to which the claimant's mental incapacity interferes with her relationship and communication with her guardian, the quality and nature of the guardian's relationship with the claimant, and any conflicts of interest that would inhibit the guardian from bringing a Vaccine Act claim on the claimant's behalf.

Because the Special Master relied solely on the fact that K.G.'s sister acted as K.G.'s guardian to find K.G's petition was untimely filed, we remand for the Special Master to consider all of the relevant facts in the first instance, with the purposes of the Vaccine Act in mind.

## III

For the reasons stated above, we vacate and remand the Claims Court's decision affirming the decision of the Special Master. The Claims Court should remand this case to the Special Master for consideration of K.G.'s claim under the standard set out in this opinion.

**VACATED AND REMANDED**

COSTS

Costs to appellant.