NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EMILIO T. PALOMER,**

*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee*

---

2015-7082

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-1017, Chief Judge Bruce E. Kasold, Judge Mary J. Schoelen, Judge William S. Greenberg.

---

Decided: April 26, 2016

---

ANGELA K. DRAKE, The Veterans Clinic at the University of Missouri School of Law, Columbia, MO, argued for claimant-appellant.

TARA K. HOGAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR.,

SCOTT D. AUSTIN, ALEXANDER V. SVERDLOV; DAVID J. BARRANS, CHRISTINA LYNN GREGG, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before LOURIE, BRYSON, and DYK, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Emilio T. Palomer appeals from a decision of the Court of Appeals for Veterans Claims ("the Veterans Court"). The Veterans Court dismissed, on timeliness grounds, Mr. Palomer's appeal from a decision by the Board of Veterans' Appeals that denied Mr. Palomer a payment from the Filipino Veterans Equity Compensation Fund ("FVECF"). We affirm.

I

The FVECF was established in 2009. It provides for a one-time payment to individuals who served in specific military organizations that aided the United States Armed Forces in the Philippines during World War II.

Shortly after the FVECF was established, Mr. Palomer, a resident of the Philippines, filed a claim for a payment from the fund. A regional office of the Department of Veterans Affairs ("DVA") sought to confirm Mr. Palomer's service in a qualifying organization by contacting the National Archive's National Personnel Records Center ("NPRC"). The NPRC responded that it had no record of Mr. Palomer's service in any of the organizations recognized by the FVECF. For the next four years, the regional office repeatedly attempted to confirm Mr. Palomer's service by submitting variations of both his name and service number. All of those attempts proved fruitless, and Mr. Palomer's service in a qualifying organization was never confirmed.

After the regional office denied Mr. Palomer's request for benefits, he appealed to the Board. On July 10, 2013, the Board issued an opinion finding that Mr. Palomer did not have the requisite service in any of the organizations recognized by the FVECF. The Board's opinion was mailed to Mr. Palomer on the day it issued. The opinion was accompanied by a copy of VA Form 4597 entitled "Your rights to appeal our decision." That form includes the statement "How long do I have to start my appeal to the Court? You have 120 days from the date this decision was mailed to you."[1]

On November 20, 2013, 133 days after the Board's opinion was issued and mailed, Mr. Palomer mailed a one-page letter to the Board stating: "I would like to file an appeal with regards to your decision denying my personal claim to the one time settlement payment from the Filipino Veterans Equity Compensation Fund." The letter expressed Mr. Palomer's desire to provide "oral narration and testimony" to prove that he served during World War II as a guerilla. The Board received that document on December 4, 2013.

The Board treated Mr. Palomer's November 20 letter as a request for reconsideration of its earlier decision, and on December 26, 2013, the Board denied the request. On March 18, 2014, Mr. Palomer mailed a notice of appeal to the Veterans Court, which docketed the appeal on April 7, 2014.

---

[1]   A section of Form 4597 entitled "How do I file a motion for reconsideration" states: "Remember, the Board places no time limit on filing a motion for reconsideration, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision."

The DVA moved to dismiss Mr. Palomer's appeal on the ground that that his motion for reconsideration was not filed within 120 days of the date that the Board's original decision was mailed to him, and therefore his subsequent appeal to the Veterans Court was untimely under 38 U.S.C. § 7266(a). That statute provides that "a person adversely affected by [a Board] decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed." A motion for reconsideration filed with the Board tolls the period for filing a notice of appeal to the Veterans Court, but only if the motion for reconsideration is filed within 120 days of the Board's original decision. *See Rosler v. Derwinski*, 1 Vet. App. 241, 245 (1991).

The Veterans Court dismissed Mr. Palomer's appeal as untimely. The court held that Mr. Palomer had not shown that he was entitled to equitable tolling of the 120-day appeal period, either because of the delay caused by international mail service in his receipt of the Board's decision; because of his age and physical condition; or because of the allegedly confusing instructions regarding the 120-day deadline for filing a notice of appeal.

II

Mr. Palomer argues that the Veterans Court committed legal error by not invoking equitable tolling to excuse his failure to meet the statutory 120-day appeal period.[2]

---

[2]    Although the government argues that this court lacks jurisdiction to decide the equitable tolling issue under 38 U.S.C. § 7292, we have held that when the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of the equitable tolling claim, the question of the availability of equitable tolling is a matter of law that we are authorized by statute to address. *Sneed v. McDonald*, No. 15-7069,

Following the decision of the Supreme Court in *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 431 (2011), which held that the 120-day period for appeals to the Veterans Court is not jurisdictional, this court has treated that filing period as subject to equitable tolling. *See, e.g., Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014); *Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013). To prove entitlement to equitable tolling, however, a claimant must bear the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Sneed v. McDonald*, No. 15-7069, at 6; *Toomer v. McDonald*, 783 F.3d 1229, 1238 (Fed. Cir. 2015); *Checo*, 748 F.3d at 1378.

Mr. Palomer contends that he satisfies that test because he pursued his rights diligently and because he was presented with two extraordinary circumstances: (1) the time it took the Board's opinion to reach him in the Philippines and (2) his physical condition, which required him to obtain assistance in filing papers with the DVA and the Veterans Court. Mr. Palomer also argues that the equitable purposes underlying the FVECF should factor into the equitable tolling analysis.

---

at 5 (Fed. Cir. Apr. 22, 2016); *Bailey v. Principi*, 314 F.3d 1293, 1298 (Fed. Cir. 2003). There is no material dispute of fact in this case, and the outcome of the case turns on the legal question whether Mr. Palomer's foreign residence, his age and physical condition, or the policies underlying the FVECF require that the 120-day appeal period be equitably tolled. We therefore have jurisdiction over the principal issues in the appeal. To the extent that some issues raised by Mr. Palomer involve factual questions, we lack jurisdiction to resolve those issues, as noted below.

A

Mr. Palomer contends that the time it took for the Board's opinion to reach his residence in the Philippines represents an extraordinary circumstance that warrants equitable tolling. According to Mr. Palomer, he "does not enjoy the reliability of postal communications that domestic U.S. veterans do" and "is subject to a considerably longer wait in order to send and receive communications through the mail." Mr. Palomer argues that in addressing this issue the Veterans Court in effect imposed upon him a shorter filing period than the statutorily mandated 120 days.

Although there is no direct evidence of how long it took the Board's opinion to reach him, Mr. Palomer contends it took 14 days for the opinion to reach him, which we accept for purposes of this proceeding. He asserts that the 120-day period for filing an appeal or a request for reconsideration should therefore be tolled by 14 days. Tolling the appeal period by that amount would mean that his request for reconsideration would be considered to have been received on the 119th day, not on the 133rd day. For the reasons give below, however, tolling is not applicable here.

Mr. Palomer also argues that the Veterans Court erred in determining that the mailing time delay could have been overcome with diligence. According to Mr. Palomer, "[i]t should have been irrelevant to the Veterans Court's evaluation of diligence that [he] could have filed his motion within a shortened appeal period of 106 days."[3] Mr. Palomer asserts that "any diligence on [his] part

---

[3]    The 106-day number represents the 120-day limit of 38 U.S.C. § 7266(a) minus the 14 days of mailing time for which Mr. Palomer argues the statute should be tolled.

could not have overcome the delay necessitated by his living conditions."

Mr. Palomer argues that the statutory 120-day limitation is premised on mail timelines within the United States, and that the longer period of time that it takes for mail to reach a claimant outside the United States constitutes an extraordinary circumstance.

The text and background of section 7266 clearly show that Congress took into account the time it takes for mail to be delivered and made specific provisions for it. In 1994, Congress amended section 7266(a) to provide that a veteran's notice of appeal is considered timely filed if it is postmarked within 120 days after the date of the decision being appealed. Congress recognized that the 120-day period "provides those who live closer to Washington, D.C., where the Court is located, more actual time to perfect their appeals than those living greater distances from the Court." S. Rep. No. 103-232, at 5 (1994). Congress was therefore aware that "a claimant in a state distant from Washington, D.C. . . . would receive notice of a [Board] decision after a claimant in a state near Washington, D.C." *Id.* at 6. Despite that awareness, and despite changing the statute in other respects, Congress left in place the provision requiring that a notice of appeal be filed within 120 days from the date the decision is mailed.

It is clear that Congress understood that no one would have the full 120 days to appeal, and that veterans closer to Washington, D.C., would have more time to perfect their appeals than those living farther away, for whom mail delivery take longer. We therefore reject Mr. Palomer's argument that the Veterans Court erred because it required "compliance with a shorter filing period than the statutorily-mandated 120 days."

Mr. Palomer argues that Congress did not contemplate that the filing deadline in section 7266(a) would

apply to international claimants, and that delays in the international mail system cause international claimants to have less time to file their notices of appeal than Congress intended to allow. Mr. Palomer points out that the statute references the U.S. Postal Service (and not foreign postal services) and that references to "states" in the legislative history of the 1994 amendment to section 7266 suggest that Congress did not have international locations in mind.

The legislative history, however, is to the contrary. The Senate Report on the 1994 amendment to section 7266(a) contains an extensive discussion of what constitutes "delivery," including a statement that delivery would be established by "postmarks that are not United States Postal Service postmarks." S. Rep. No. 103-232, at 7. That reference makes clear that Congress was cognizant of the fact that in some instances the statutory deadlines would be applied to veterans living abroad.

Mr. Palomer's argument, if accepted, would have the effect of redrafting section 7266(a) for those claimants residing outside of areas served by the U.S. Postal Service. For those claimants, the appeal period would not begin to run until the time the Board's opinion was received. For claimants residing within the area served by the Postal Service, the clock would start at the time the opinion was mailed. There is no basis in the statutory language or legislative background to infer that Congress intended to draw such a distinction.

That is not to say that a mailing delay could never be an exceptional circumstance justifying equitable tolling. If a mailing delay resulted in a claimant receiving notice of the Board's opinion after the appeal period had already run, or nearly expired, equitable tolling might well be available. But the rule Mr. Palomer seeks—to create a "receipt" requirement for claimants residing outside the United States—would effectively rewrite the statute and

would not be limited in its effect to truly extraordinary circumstances.

The 120-day period for filing a notice of appeal is intentionally generous, particularly in light of the fact that a notice of appeal is a very simple document. Congress clearly contemplated that the claimant would have less than the full 120 days to file his notice of appeal because of the time lost to delivery. Congress also understood that the period to appeal would vary somewhat between veterans, depending on the mail delivery time in each case. In light of those facts, the loss of a few days from the 120-day period due to the vagaries of mailing times is not an "extraordinary circumstance" that would warrant equitable tolling for every claimant residing outside the United States.

The Veterans Court looked to the specific facts of Mr. Palomer's case and determined that he had failed to show "that the time for mail to be delivered between the U.S. and the Philippines rises to the level of an extraordinary circumstance warranting equitable tolling." The 14-day mailing period left Mr. Palomer with 106 days within which to file his notice of appeal (or request for reconsideration). The Veterans Court noted that after the denial of his request for reconsideration, Mr. Palomar was able to file his notice of appeal within 102 days and that he was able to respond to the Secretary's motion to dismiss his appeal within 38 days from the date the motion was filed. Moreover, the court noted, Mr. Palomer failed to assert or show that he had an inadequate amount of time to consider his options and timely mail his request for reconsideration. The Veterans Court therefore concluded that this is not a case in which mailing delays disabled the claimant from meeting the applicable statutory dead-

lines.[4]  To the extent that Mr. Palomer challenges the
Veterans Court's analysis of the specific facts of this case,
and in particular whether Mr. Palomer failed to show that
he had insufficient time to file his request for reconsidera-
tion, he raises a factual matter that falls outside this
court's jurisdiction.  *See* 38 U.S.C. § 7292(d)(2).

                              B

    Mr. Palomer next argues that his age and physical
condition constitute an exceptional circumstance warrant-
ing equitable tolling.  He asserts that his circumstances
are like those of the claimant in *Barrett v. Principi*, 363
F.3d 1316, 1319 (Fed. Cir. 2004), where the court found
that equitable tolling was appropriate for a claimant who
suffered from mental illness.  He claims that he is "inca-
pable of handling his own affairs" and needed assistance
in preparing his request for reconsideration and appeal.

    This court has held that "equitable tolling based on
physical illness is appropriate." *Arbas*, 403 F.3d at 1381.
The question in such instances is whether "the particular
infirmity of the veteran prevented him from engaging in
'rational thought or deliberate decision making' or ren-
dered him 'incapable of handling [his] own affairs or

---

    [4]    Mr. Palomer compares his circumstances to those
of the veteran in *Checo*.  We do not find that contention
persuasive.  In *Checo*, the veteran became homeless due
to circumstances beyond her control and did not receive a
copy of the Board's decision until 91 days after it had
issued.  In this case, Mr. Palomer does not allege that he
suffered any external obstacle other than the 14-day
period required for the delivery of the mail in the Philip-
pines, and he admits he received the Board's decision
when he still had 88 percent of the statutory time period
for filing a notice of appeal (or a request for reconsidera-
tion to be followed by a notice of appeal).

unable to function [in] society.'" *Id.*; *see also Barrett v. Principi*, 363 F.3d at 1321 (applying the same standard to mental illness). As an exemplary list of such physical illnesses that might "impair cognitive function or the ability to communicate," *Arbas* lists a sufficiently incapacitating stroke; "severe head trauma"; "a heart attack"; and other cases in which "one may retain full consciousness but still be unable to speak or communicate effectively, as may be the case for those in extreme pain or who have been immobilized." *Id.*

The Veterans Court found that "other than vague assertions of physical infirmity, Mr. Palomer offers no evidence demonstrating that his physical condition rendered him incapable of handling his affairs." The court considered his statements concerning his health and his awareness of the requirements for appeal of the Board's decision.[5] With respect to this issue, the government correctly notes that Mr. Palomer is simply asking this court to reach a different conclusion as to a factual matter addressed by the Veterans Court, a task that is outside the scope of our limited jurisdiction in reviewing decisions of the Veterans Court. *See* 38 U.S.C. § 7292(d)(2).

C

Finally, Mr. Palomer argues that equitable tolling should be applied because his claim arises under the Filipino Veterans Equity Compensation Act. According to Mr. Palomer, that Act "is equitable by its very nature," and is "a result of extraordinary circumstances in our nation's veterans benefits history," which "should factor in to the extraordinary circumstances analysis."

---

[5] As in *Toomer v. McDonald*, 783 F.3d 1229, 1239 (Fed. Cir. 2015), the Veterans Court's factual findings concerning the veteran's understanding of Form 4597 are outside this Court's limited jurisdiction.

Congress directed the DVA to administer the FVECF in accordance with title 38 of the United States Code unless otherwise provided. American Recovery and Reinvestment Act of 2009, Pub. L. 111-5, § 102(j), 123 Stat. 115, 200 (2009). Congress was plainly aware that many FVECF claimants would share Mr. Palomer's circumstances. The FVECF is specifically directed at those who aided U.S. forces in the Philippines during World War II and makes specific provision for native residents of the Philippines. Congress would unquestionably understand that by 2009, veterans who had served in World War II would be advanced in age. Despite that awareness, however, Congress did not alter the provisions of 38 U.S.C. § 7266(a) for FVECF applicants. We therefore decline to hold that the equitable purpose underlying the FVECF constitutes an extraordinary circumstance justifying equitable tolling of the time limitations in section 7266(a).

No costs.

**AFFIRMED**