# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-4372

SHERRY CRAIG-DAVIDSON,                      APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS,             APPELLEE.

Before GREENBERG, MEREDITH, and LAURER, *Judges*.

## O R D E R

On June 22, 2020, the appellant, Sherry Craig-Davidson, then proceeding pro se, filed a Notice of Appeal (NOA) from a December 3, 2019, Board of Veterans' Appeals (Board) decision that denied disability compensation for residuals of lung cancer. The Board decision was issued in the name of the veteran, Virgil Davidson, who had served on active duty in the U.S. Marine Corps from November 1955 to November 1961. The NOA listed Virgil Davidson as the appellant but was signed by Sherry Craig-Davidson, who indicated that she was Mr. Davidson's spouse.[1]

Pending before the Court is the Secretary's August 17, 2020, motion to dismiss the appeal as untimely because the NOA was filed 202 days after the Board issued its decision. This matter was submitted to a panel to determine whether the appellant, the surviving spouse of the veteran and an eligible accrued-benefits claimant,[2] has standing to appeal on her own behalf the December 2019 Board decision, when the veteran died more than 120 days *after* the Board issued its decision. The Court held oral argument on March 16, 2022. For the reasons that follow, the Court concludes that the appellant has statutory and constitutional standing to bring this appeal because the veteran, by application of the doctrine of equitable tolling, died during the time that he was permitted to file an NOA, and therefore the appellant is adversely affected by the Board's decision in the same manner that the veteran was adversely affected by the Board's decision. Further, because the veteran's time to appeal the Board's decision was tolled from December 3, 2019, the day the Board issued its decision, to May 23, 2020, the date of the veteran's death, the appellant's NOA, which was filed 30 days later, will be treated as timely, and the Court will deny the Secretary's motion to dismiss.

---

[1] The Clerk of the Court (Clerk) initially docketed the appeal in the veteran's name; however, 3 days later, the Clerk issued a corrected notice of docketing that changed the name of the appellant from the veteran to his surviving spouse, Sherry Craig-Davidson.

[2] Pursuant to section 5121(a)(2) of title 38, U.S. Code, under certain circumstances, VA shall pay a qualified survivor, such as a veteran's spouse, "periodic monetary benefits . . . under laws administered by the Secretary to which [the veteran] was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death . . . and due and unpaid." 38 U.S.C. § 5121(a)(2).

## A. Procedural History

As mentioned, the Secretary filed a motion to dismiss this appeal as untimely. The appellant initially responded that she was unable to file a timely NOA as a result of the veteran's health. Appellant's Aug. 26, 2020, Response (Resp.) at 1. She explained that the veteran required hospice care from December 2019 until his death on May 23, 2020, and she requested that her NOA be accepted as timely "due to [the] unusual circumstances required to care for [the v]eteran and required to settle matters of [the] estate." *Id.* at 2.

The Court held the Secretary's motion to dismiss in abeyance, stayed proceedings in the appeal, and ordered the appellant to provide a copy of the veteran's death certificate and to inform the Court whether she filed a claim for accrued benefits at the VA regional office (RO). The appellant promptly submitted a copy of a death certificate reflecting that the veteran died on May 23, 2020, 171 days after the Board issued its decision, and a completed VA Form 21P-0847, Request for Substitution of Claimant Upon Death of Claimant. Appellant's Oct. 20, 2020, Resp. The Secretary subsequently informed the Court that the appellant meets the basic eligibility requirements for substitution as the veteran's spouse and is an eligible accrued-benefits claimant pursuant to 38 U.S.C. §§ 5121(a), 5121A. Secretary's Mar. 24, 2021, Resp.

In the meantime, the appellant retained counsel, and on June 21, 2021, the Court ordered the parties to submit supplemental briefs addressing whether the appellant has statutory and constitutional standing to pursue an appeal of the December 2019 Board decision. *Craig-Davidson v. McDonough*, U.S. Vet. App. No. 20-4372 (June 21, 2021) (unpublished order). The Court also ordered the parties to address the import, if any, of the appellant's allegation that she did not timely file an NOA because of the veteran's health, including the "'unusual circumstances required to care for [the v]eteran and required to settle matters of [the] estate.'" *Id.* (quoting Appellant's Aug. 26, 2020, Resp. at 2). In that regard, the Court acknowledged its holding in *Demery v. Wilkie* that "an eligible accrued-benefits claimant has standing, both as a statutory and as a constitutional matter, to file an appeal on his or her own behalf when a veteran dies *during the time permitted to file an NOA*," 30 Vet.App. 430, 438 (2019) (per curiam order) (emphasis added), but the Court requested additional briefs because (1) the Court in *Demery* found it significant that the veteran died during the judicial appeal period, and (2) unlike the circumstances in *Demery*, the veteran in this case died, and the appellant filed her NOA, more than 120 days after the Board's decision, *Craig-Davidson*, June 21, 2021, Order.

## B. The Parties' Arguments

In her response to the Court's June 2021 order, the appellant asserts that she has statutory and constitutional standing to pursue an appeal based on the Court's holding in *Demery*, that extraordinary circumstances beyond the Davidsons' control caused a delay in the filing of an NOA, and that she exercised due diligence by filing an NOA 30 days after the veteran's death. Appellant's Oct. 11, 2021, Resp. at 1-2. She maintains that "[t]he rationale used in *Demery* to allow an accrued-benefits claimant to cure a defective NOA with a subsequent filing, also supports the conclusion that equitable tolling should allow [her] to pursue this appeal." *Id.* at 2.

In particular, the appellant contends that the *timing* of the filing of the NOA in this case does not warrant a different result from *Demery*, asserting that there is no distinction between the filing of an invalid NOA before the 120-day judicial appeal period expired in *Demery* and this case, where the period to file an NOA was tolled as a result of the veteran's terminal illness. *Id.* at 5-6. In that regard, the appellant submitted a declaration in which she describes the veteran's circumstances from November 2019 to May 2020, and she maintains that these circumstances rendered the veteran unable to handle his affairs and take appropriate action during this period. *See id.* at 7-10; Exhibit A. Specifically, the appellant avers that (1) the veteran was placed on palliative care in November 2019; (2) he was homebound by December 2019, during which time a hospice care provider came to the house; (3) the veteran was taking morphine and lorazepam and was asleep for most of the day; (4) while medicated, the veteran's "ability to read and comprehend information and take action on it was severely compromised"; (5) by March 2020, "[t]here were often times that [the veteran] was not conscious and [the appellant] could not wake him"; (6) the onset of the COVID-19 pandemic and the restrictions related to it made it extremely difficult for the appellant to manage things; and (7) the appellant cared for the veteran and managed all household affairs until his death on May 23, 2020. Appellant's Oct. 11, 2021, Resp.; Exhibit A.

The appellant further asserts that, because there is a definite end date to the extraordinary circumstances here, the stop-clock approach addressed by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014), should apply. Appellant's Oct. 11, 2021, Resp. at 6. And, under that approach, she maintains that the period for filing an NOA was tolled from December 3, 2019, the date the Board issued its decision, to May 23, 2020, the date of the veteran's death. *Id.* As a result, she avers that her NOA, which was filed 30 days later, should be treated as timely. *Id.*; *see* U.S. VET. APP. R. 4(a)(3)(B)(ii) (permitting an NOA to be treated as timely if equitable tolling is warranted).

Additionally, the appellant contends that, even assuming that *Demery* is not directly on point, the reasoning underlying the Court's decision compels a similar result: (1) "The happenstance of Mr. Davidson's terminal illness and death" should not preclude an appeal, (2) "[d]ismissing this appeal would cause the kind of inherent inequity that is inconsistent with what Congress did when enacting 38 U.S.C. [§] 5121A and that the Court sought to avoid in *Demery*," and (3) allowing the appeal to proceed on the merits does not prejudice the Secretary and would instead constitute an exercise of this Court's flexibility, as acknowledged by the U.S. Supreme Court in *Henderson v. Shinseki*, 562 U.S. 428, 440-41 (2011), when it comes to filing NOAs. Appellant's Oct. 11, 2021, Resp. at 10. Finally, the appellant asserts that, if any doubt remains about whether her case should go forward, it must be resolved in her favor. *Id.* at 11 (first citing *Henderson*, 562 U.S. at 431; then citing *Bailey v. West*, 160 F.3d 1360, 1368-69 (Fed. Cir. 1998) (en banc) (Michel, J., concurring); then citing *Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998); and then citing H.R. REP. NO. 100-963, at 13 (1988)).

The Secretary argues in response that the Court's holding and analysis in *Demery* does not apply because, unlike the circumstances in *Demery*, the veteran in this case died *after* the judicial appeal period expired; i.e., he died 52 days after the 120 days provided in 38 U.S.C. § 7266 to file an NOA. Secretary's Dec. 1, 2021, Resp. at 4. Consequently, the Secretary maintains that the appellant has not met her burden of demonstrating that she has standing to appeal the December 2019 Board decision. *Id.* Further, although the Secretary acknowledges that "[the appellant] offers

3

compelling explanations as to why the NOA was filed untimely which the Court may find . . . demonstrates a bas[i]s for equitable tolling," the Secretary argues that the appellant must establish standing *before* the Court could determine whether equitable tolling is warranted. *Id.* at 5.

At oral argument, the appellant through counsel maintained that the answer to the question of whether she has statutory and constitutional standing to pursue this appeal turns on the phrase in *Demery*—"'when a veteran dies during the time permitted to file an [appeal].'" Oral Argument (OA) at 2:00-25, http://www.uscourts.cavc.gov/oral_arguments_audio.php (quoting *Demery*, 30 Vet.App. at 438). The appellant argued that the "phrase must be read in light of relevant precedent and the language of Rule 4 [of the Court's Rules of Practice and Procedure (Rules)] to include any period of equitable tolling that a deceased veteran would have been entitled to [receive] before filing [his or her] appeal." *Id.* at 2:25-46. In furtherance of her position, the appellant emphasized that the Court in *Demery* did not limit its holding to the 120 days directly *after* the Board issued its decision or refer specifically to the period provided in 38 U.S.C. § 7266(a). OA at 20:13-22:00. Rather, the Court broadly referred to the "time permitted to file an NOA" and pointed to the U.S. Supreme Court's decision in *Henderson* as providing the Court with the flexibility to forgive late filings through doctrines such as equitable tolling and to allow claims to go forward on the merits. *See id.*

Finally, in response to the Court's question as to whether the timing of the veteran's death is relevant to the issue of standing—that is, if the appellant's standing turns on whether the veteran's time to appeal had already run when he passed away—the appellant clarified that, in her view, "there is no question that [she] has standing[,] [and she maintained that t]hat issue was resolved by virtue of the VA's acknowledgment of her status as an accrued-benefits claimant." *Id.* at 13:11-14:06. She then asserted that "there is a separate question as to whether or not this appeal can move forward . . . based on the timing of the filing of the [NOA]." *Id.* at 14:07-19.

The Secretary, on the other hand, maintained that the appellant cannot establish that she has standing because she does not satisfy the statutory requirements of section 7266(a). *Id.* at 22:35-23:03. The Secretary argued that the Court should not read *Demery* separate and apart from section 7266(a), asserting that the Court in *Demery* did not intend to go beyond the 120-day period provided in section 7266(a) in part because the Court held that an accrued-benefits claimant's right to file an appeal on his or her own behalf arises upon the death of the veteran. *Id.* at 23:38-25:19. The Secretary thus asserted that the appellant did not become a person adversely affected by the Board decision until the veteran's death, which was after the veteran's time to file a timely NOA had expired. *Id.* at 24:45-25:19.

As for equitable tolling, the Secretary averred that it does not apply because addressing equitable tolling before standing puts the cart before the horse. *Id.* at 27:40-55. The Secretary asserted that caselaw applying equitable tolling refers solely to circumstances that prevent the timely filing of an NOA and that, here, the appellant was never in a position to file a timely NOA because she did not become adversely affected by the Board decision until after the veteran's death. *Id.* at 27:56-28:27. To the extent, however, that the Court questioned whether the veteran was incapable of handling his affairs between the time the Board issued its decision and his death and whether that may constitute an extraordinary circumstance, the Secretary essentially conceded that the veteran's circumstances were "compelling." *Id.* at 32:50-34:35. Nonetheless, the Secretary

seemed to contend that the time to appeal the Board's decision had already expired at the time of the veteran's death. *Id.* at 34:45-36:22. Finally, the Secretary took the position that, although the veteran could not appeal during his lifetime because he was incapable of handling his affairs, the appellant has no recourse to continue the veteran's claim under the circumstances of this case; i.e., when the veteran passed away after the 120-day period under section 7266(a) had expired. *Id.* at 36:25-37:23.

On rebuttal, the appellant argued that the Secretary's view ignores at least two points emphasized by the Court in *Demery*: it would create a zone of no substitution and preclude an appeal based on the happenstance of the timing of Mr. Davidson's death. *Id.* at 40:58-42:44. Additionally, because section 7266 is a claims-processing rule, the appellant reiterated that it does not limit the Court's jurisdiction or limit the period permitted to file an NOA to the 120 days provided in the statute; rather, it is subject to equitable tolling as reflected in Rule 4 of the Court's Rules. *Id.* at 45:45-46:45.

C. Legal Landscape

Generally, to obtain Court review of an adverse Board decision, the appellant must submit an NOA to the Court within 120 days of the date on which the Board's decision was mailed. 38 U.S.C. § 7266(a). Under certain circumstances, the 120-day judicial appeal period may be equitably tolled. *See* U.S. VET. APP. R. 4(a)(3)(B)(ii). In that regard, the Court has adopted a three-part test to determine whether equitable tolling is appropriate based on extraordinary circumstances: (1) the extraordinary circumstance must be beyond the appellant's control, (2) the appellant must demonstrate that the untimely filing was a direct result of the extraordinary circumstance, and (3) the appellant must have exercised due diligence, "meaning that a reasonably diligent appellant, under the same circumstances, would not have filed" his or her NOA within the 120-day period. *McCreary v. Nicholson*, 19 Vet.App. 324, 332 (2005), *adhered to on reconsideration*, 20 Vet.App. 86 (2006); *see Checo*, 748 F.3d at 1378.

"Equitable tolling is not 'limited to a small and closed set of factual patterns,'" and the Court must consider equitable tolling on a "'case-by-case basis,'" "'avoiding mechanical rules,'" and observing "'the need for flexibility.'" *Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013) (first quoting *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005); and then quoting *Holland v. Florida*, 560 U.S. 631, 650 (2010)). It is settled, however, that mental and physical illness may justify equitable tolling under certain circumstances. *See Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005); *Barrett v. Principi*, 363 F.3d 1316, 1320-21 (Fed. Cir. 2004). The test is "whether the particular infirmity of the veteran prevented him from engaging in 'rational thought or deliberate decision making' or rendered him 'incapable of handling [his] own affairs or unable to function [in] society.'" *Arbas*, 403 F.3d at 1381 (quoting *Barrett*, 363 F.3d at 1321 (citations omitted)). The appellant bears the "burden to demonstrate entitlement to equitable tolling and to produce any evidence supporting his claim for equitable tolling." *Palomer v. McDonald*, 27 Vet.App. 245, 251 (2015) (per curiam order), *aff'd*, 646 F. App'x 936 (Fed. Cir. 2016).

Additionally, to bring an appeal to this Court, an appellant must establish statutory and constitutional standing by demonstrating that he or she is "adversely affected" by the Board decision sought to be appealed. 38 U.S.C. § 7266(a) ("[T]o obtain review . . . of a final decision of

the Board . . . , a person *adversely affected* by such decision shall file [an NOA] with the Court within 120 days after the date on which notice of the decision is mailed." (emphasis added)); *see Demery*, 30 Vet.App. at 436 (explaining that, if one is "'adversely affected' by a Board decision[,] this is a sufficient injury to establish a case or controversy and thus standing" (quoting 38 U.S.C. § 7266(a))); *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990) (holding, as a matter of policy, "that the Court will adhere to the case or controversy jurisdictional restraints adopted by Article III courts"). Standing is a threshold question that must be satisfied when the appeal is filed. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003); *see also Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("'[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought.'" (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824))). The appellant bears the burden to establish standing. *See Skaar v. Wilkie*, 32 Vet.App. 156, 173 (2019) (en banc order) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Historically, the Court had concluded that an accrued-benefits claimant lacked standing to appeal a Board decision issued in the name of a veteran who died after the Board issued its decision and prior to filing an NOA. *See Kelsey v. West*, 13 Vet.App. 437, 438 (2000) (per curiam order). That caselaw was grounded, in part, in the Court's jurisprudence concerning substitution in appeals pending at the Court. *See id.* at 438. Specifically, with regard to substitution, early caselaw held that (1) a veteran's chapter 11 disability compensation claim did not survive the eligible veteran's death; (2) an accrued-benefits claim, although derivative of the veteran's claim, was a separate claim from the veteran's claim for disability benefits, and therefore an accrued-benefits claimant lacked standing to substitute in the veteran's appeal; and (3) because the veteran's appeal became moot by virtue of his or her death, the appropriate remedy was to vacate the underlying Board decision and dismiss the appeal. *See Zevalkink v. Brown*, 102 F.3d 1236, 1243-44 (Fed. Cir. 1996); *Landicho v. Brown*, 7 Vet.App. 42, 47-49, 53-54 (1994). The Court recognized that, by vacating the Board's decision, the decision would not have any preclusive effect on an accrued-benefits claimant's derivative claim, which he or she was required to pursue anew before the Agency. *See Landicho*, 7 Vet.App. at 54 (noting that the purpose of vacating a judgment when a case has become moot "'is commonly utilized in precisely this situation to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences'" (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950))).

As discussed more fully in this Court's decision in *Breedlove v. Shinseki*, the jurisprudence concerning substitution has evolved. 24 Vet.App. 7, 14-18 (2010) (per curiam order). In its 2007 decision in *Padgett v. Nicholson*, the Federal Circuit departed from *Landicho* and *Zevalkink* by holding that, in certain circumstances, an accrued-benefits claimant may be substituted in the veteran's appeal in order to protect the accrued-benefits claimant's legal interests. 473 F.3d 1364 (Fed. Cir. 2007). Specifically, in *Padgett*, the Federal Circuit held that, when a veteran dies after the case is submitted for this Court's decision, but before the opinion issues, this Court has the authority to issue judgment nunc pro tunc to the date of the veteran's death. *Id.* at 1367-71. And the Federal Circuit held that, in those circumstances, an accrued-benefits claimant has standing to be substituted in the veteran's appeal. *Id.*; *see Breedlove*, 24 Vet.App. at 17.

Following *Padgett*, this Court established a three-part test to permit substitution and adjudication on the merits: "First, the matter must have been submitted for decision. Second,

substitution must be appropriate—that is, the party seeking substitution must have standing. Third, the interests of justice and fairness must support substitution." *Pekular v. Mansfield*, 21 Vet.App. 495, 502 (2007). The Court in *Pekular* nonetheless explained that *Landicho* remained viable precedent; if the test for substitution was not satisfied, then the underlying Board decision must be vacated and the appeal dismissed. *Id.* at 501.

However, in 2010, the Court revisited its then-current practice of rejecting substitution in cases in which the matter was pending at the Court and had not yet been submitted for decision. *Breedlove*, 24 Vet.App. at 7. The Court determined, following the 2008 enactment of 38 U.S.C. § 5121A,[3] that Congress, by allowing an accrued-benefits claimant to continue the veteran's claim, altered the distinction previously drawn by *Landicho* and *Zevalkink* between the deceased veteran's claim and that of the surviving accrued-benefits claimant. *Breedlove*, 24 Vet.App. at 18-19; *see id.* at 19 ("Congress has now indicated that the congressional intent to treat a veteran's claim as an entirely separate statutory entity from a survivor's accrued-benefits claim no longer exists.").

The Court thus held that a veteran's claim no longer dies with him or her. Rather, "a veteran's chapter 11 disability benefits claim survives the death of the veteran, not for the purpose of providing VA benefits to a veteran, but for the purpose of furthering the claim of an eligible accrued-benefits claimant." *Id.* at 20. Further, because the foundation underlying the Court's substitution caselaw shifted with the enactment of section 5121A, the Court concluded that "no rationale now exists for foreclosing the opportunity for substitution on appeal at this Court based on the timing of the death of the veteran." *Id.* at 19; *accord Reeves v. Shinseki*, 682 F.3d 988, 995-97 (Fed. Cir. 2012). Importantly, the Court recognized that we would create a zone of no substitution if we continued our then-current practice—that is, section 5121A would permit substitution within VA up to the date of the Board decision, but the Court's practice would deny an eligible accrued-benefits claimant's request for substitution where the veteran died *after* issuance of the Board decision and *before* the case is submitted for decision by the Court. *Breedlove*, 24 Vet.App. at 19.

The Court in *Breedlove* further emphasized that Congress enacted section 5121A "to address the concern of delay, unfairness, and inefficiency," and that to continue the practice established in *Pekular* would be inconsistent with the change in the legislative scheme. *Id.* at 20; *see Reeves*, 682 F.3d at 997 ("Congress has deemed it both 'unfair and inefficient' to require an accrued-benefits claimant to restart the claims process after a veteran's death." (quoting H.R. REP. NO. 110-789, at 17 (2008))). Consequently, the Court in *Breedlove* announced that it "henceforth will consider substitution, if requested, in all cases pending before the Court," and the Court concluded as follows:

---

[3] Section 5121A(a)(1) provides in pertinent part:

If a claimant dies while a claim for any benefit under a law administered by the Secretary, or an appeal of a decision with respect to such a claim, is pending, a living person who would be eligible to receive accrued benefits due to the claimant under section 5121(a) of this title may, not later than one year after the date of the death of such claimant, file a request to be substituted as the claimant for the purposes of processing the claim to completion.

38 U.S.C. § 5121A(a)(1).

An eligible accrued-benefits claimant *is* 'adversely affected' by the appealed Board decision denying a veteran's claim for benefits and has standing to pursue substitution on the veteran's claim because he or she is affected by the VA adjudications . . . in the same way that the veteran was affected at the time he filed his [NOA].

24 Vet.App. at 20 (emphasis added) (quoting 38 U.S.C. § 7266(a)). The Court also explained that, with these changes, an accrued-benefits claimant "has two options"—request substitution and continue the deceased veteran's appeal at the Court or allow the Board decision to be vacated in order to avoid any preclusive effect and pursue an accrued-benefits claim at the RO. *Id.*

Finally, in 2019, the Court in *Demery* determined that the rationale underlying *Breedlove* and the enactment of section 5121A undermined the Court's decision in *Kelsey* regarding an accrued-benefits claimant's standing to bring an appeal. *Demery*, 30 Vet.App. at 436-39. In that regard, the Court recognized that, if we do not allow an accrued-benefits claimant to bring an appeal when the veteran dies *after* the Board issues its decision and prior to the filing of an NOA, the Court would be "adopt[ing] the functional equivalent of the zone of no substitution *Breedlove* rejected." *Id.* at 438. Based on the same "inherent inequity that would flow from substitution rights being tied to the happenstance of the timing of a veteran's death," the Court held that "an eligible accrued-benefits claimant has standing, both as a statutory and as a constitutional matter, to file an appeal on his or her own behalf when a veteran dies *during the time permitted to file an NOA*. . . . [and that t]his right arises upon the death of the veteran." *Id.* at 437-38 (emphasis added). The Court explained as follows:

Because Congress granted accrued-benefits claimants the right to advance a deceased veteran's appeal on the claimant's own interest, the Court sees no reason to distinguish between the standing necessary to substitute into an existing appeal and the standing necessary to initiate an appeal by filing an NOA. Therefore, an eligible accrued-benefits claimant qualifies as a "person adversely affected" by a final Board decision under [38 U.S.C. §] 7266 and has a sufficient injury to support standing under Article III of the Constitution.

*Id.* at 438-39 (quoting 38 U.S.C. § 7266(a)). In sum, the Court in *Demery* concluded that the rationale supporting substitution applies equally to an eligible accrued-benefits claimant's right to file an NOA in his or her name, and that the timing of the veteran's death should not determine whether an accrued-benefits claimant may continue the veteran's appeal. *Id.*

### D. Discussion

The crux of the parties' dispute here centers on whether the appellant has standing to bring this appeal in her own right and, if so, whether it was timely filed. As explained below, the Court answers both questions in the affirmative.

8

*1. Standing*

To begin, it is undisputed that the appellant is an eligible accrued-benefits claimant. Hence, as the Court recognized in *Demery*, pursuant to section 5121A, she could have been permitted to be substituted in an administrative appeal if the veteran had died while his case was pending before the Board, and pursuant to *Breedlove*, she could have been substituted into an appeal at the Court if the veteran had died after he filed an NOA. *See Demery*, 30 Vet.App. at 437-38. In furtherance of Congress's intent to allow an accrued-benefits claimant to advance a deceased veteran's claim at the administrative level, and to avoid a zone of no substitution based on the timing of the veteran's death, the Court in *Demery* held that an accrued-benefits claimant has statutory and constitutional standing "to file an appeal on his or her own behalf when a veteran dies *during the time permitted to file an NOA*." *Id.* at 438 (emphasis added).

This case requires the Court to address how broadly, or narrowly, we should read the emphasized language. The appellant maintains that the "phrase must be read in light of relevant precedent and the language of Rule 4 to include any period of equitable tolling that a deceased veteran would have been entitled to [receive] before filing [his or her] appeal." OA at 2:25-46. The Secretary proffers a narrower reading and argues that the veteran's time to file an NOA is limited to the 120-day deadline provided in 38 U.S.C. § 7266(a). OA at 22:35-25:19. The Secretary also maintains that the appellant must establish standing before the Court may address the issue of equitable tolling. *Id.* at 27:40-28:27. The Court agrees with the appellant.

First, *Demery* included timing as part of the standing inquiry by holding that an accrued-benefits claimant has standing "to file an appeal on his or her own behalf when a veteran dies *during the time permitted to file an NOA*." 30 Vet.App. at 438 (emphasis added). In other words, we cannot examine standing and timing as completely separate matters, as the Secretary advocates, because those issues are intertwined when applying the test set forth in *Demery*. Next, the Secretary does not point to any language in *Demery*, nor does the Court discern any, indicating that *Demery* intended to limit the window for attaining standing to the 120-day statutory deadline provided in section 7266(a). Indeed, it would have been incongruous for the *Demery* Court, in setting forth the requirements for standing, to have strictly defined the timeframe for filing an appeal but to later acknowledge, in allowing Mrs. Demery to amend her defective NOA, that we have "flexibility to forgive late filings through doctrines such as equitable tolling." *Id.* at 443-44. Further, although the Court concluded that an accrued-benefits claimant's right to file an appeal "arises upon the death of the veteran," *id.* at 438, the Court in *Demery* was not called upon to address whether the relevant window for determining an accrued-benefits claimant's standing is limited to the 120-day statutory deadline without regard to whether the veteran would have been required to file an NOA on his or her behalf within that period.

The Court addresses those circumstances in this case and concludes that the rationale underlying the Court's decision in *Demery*, which stems from *Breedlove* and the enactment of section 5121A, undermines the Secretary's position here. The happenstance of the timing of the veteran's death should not foreclose an accrued-benefits claimant's ability to advance his or her interest in claims that the veteran could have continued to pursue but for the veteran's death. *See Demery*, 30 Vet.App. at 438 (explaining that if the Court did not allow an accrued-benefits claimant to file an NOA at the Court when a veteran dies between the date of the Board's decision

9

and before filing an NOA, "we would adopt the functional equivalent of the zone of no substitution *Breedlove* rejected"). Rather, our caselaw stands for the proposition that an eligible accrued-benefits claimant should have the means to continue the veteran's claim, regardless of whether that continuation happens through an accrued-benefits claimant's request for substitution in a claim or appeal pending before the Agency, *see* 38 U.S.C. § 5121A, by a request for substitution in an appeal pending at the Court, *see Breedlove*, 24 Vet.App. at 11-14, or by filing an NOA at the Court on his or her own behalf, *see Demery*, 30 Vet.App. at 437-38.

Moreover, it would be inconsistent with the purpose of section 5121A to conclude on the one hand that, had the veteran survived, his time to appeal the December 2019 Board decision may not have expired as of June 2020 because the appeal period was equitably tolled, but to hold on the other hand that the appellant, as an accrued-benefits claimant, cannot advance on her own interest the same rights the deceased veteran could have asserted but for his passing. *See Breedlove*, 24 Vet.App. at 20 (explaining that, after the enactment of section 5121A, "the accrued-benefits claim by a survivor no longer represents a separate interest that must be separately pursued apart from the veteran's underlying claim"). The Court thus holds that an eligible accrued-benefits claimant steps into the shoes of the veteran at the time of the veteran's death; if the veteran's time to appeal an adverse Board decision had not expired because the Court determines that equitable tolling applies, the accrued-benefits claimant may avail himself or herself of the tolled period to satisfy the requirement in *Demery* that the death occur during the period to appeal. That means, if the Board issues a decision denying benefits to the veteran on whose behalf accrued-benefits status is based, and the veteran died while he or she could have still appealed the Board decision, the accrued-benefits claimant is adversely affected by the Board's decision in the same manner as the deceased veteran and has standing to challenge it.

Allowing a survivor to benefit from tolling based on circumstances that impacted the deceased during his or her lifetime is not a novel legal concept. Indeed, other Federal Courts have allowed survivors, under certain circumstances, to pursue medical malpractice and wrongful death claims against the United States under the Federal Tort Claims Act when the period of limitations was tolled during the time the decedent was incapacitated. For example, in *Dundon v. United States*, the court concluded that the decedent's parents timely filed an action within the 2-year limitations period because the decedent's time to bring the action was tolled for the 20 months that he was comatose before his death. 559 F. Supp. 469, 475 (E.D.N.Y. 1983). Thus, assuming that the cause of action accrued in August 1975, the court found that the clock stopped from January 1976 until September 1977, and therefore the administrative claim filed in January 1979 was timely. *Id.* at 475; *see Washington v. United States*, 769 F.2d 1436, 1439 (9th Cir. 1985) (concluding that the decedent had a viable personal injury action at the time of her death because she was in a coma and unaware of the existence and cause of her injuries, and therefore her heirs' wrongful death action filed within 2 years after her death was timely); *see also Clifford v. United States*, 738 F.2d 977, 980 (8th Cir. 1984) (holding that the statute of limitations did not run during the time the plaintiff was comatose and that his girlfriend and family had no legal duty to act).

In sum, in determining whether the veteran's death occurred during the period to appeal the adverse Board decision, the appellant, as an accrued-benefits claimant, is not limited to the 120-day period set forth in section 7266(a). Rather, the appellant steps into the shoes of the veteran at the time of death; if the veteran's time to file an appeal had not yet run as of the date of his death, then

the appellant may be considered a person adversely impacted by the December 2019 Board decision denying the veteran's lung cancer claim, and she has standing to file an NOA in her own right.

## 2. Equitable Tolling[4]

The remaining question is whether the veteran's time to appeal the December 2019 Board decision had expired prior to his death. In that regard, it is undisputed that the veteran died 171 days after the Board issued its decision. The appellant nonetheless argues that the veteran's time to appeal the Board's decision did not begin to run because he was incapacitated by his terminal illness from December 2019 through the date of his death. The Secretary does not factually dispute the extent of the veteran's incapacity. Indeed, the Secretary's counsel conceded at oral argument that the veteran's circumstances were "compelling." OA at 32:50-34:35.

Here, the Court concludes that the appellant has shown that the veteran's illness rendered him incapable of handling his own affairs and thus constitutes an extraordinary circumstance. *See Arbas*, 403 F.3d at 1381; *Barrett*, 363 F.3d at 1321. The pleadings indicate that (1) the veteran was placed on palliative care in November 2019 and homebound by December 2019; (2) he was taking morphine and lorazepam and was asleep for most of the day; (3) while medicated, his "ability to read and comprehend information and take action on it was severely compromised"; (4) by March 2020, "[t]here were often times that [the veteran] was not conscious and [the appellant] could not wake him"; and (5) the appellant cared for the veteran and managed all household affairs until his death on May 23, 2020. Appellant's Oct. 11, 2021, Resp.; Exhibit A.

Additionally, because the extraordinary circumstance had a definite end date, the Court will apply the "stop-clock approach" adopted by the Federal Circuit in *Checo*. 748 F.3d at 1379-80 (explaining that "the clock measuring the 120-day appeal period is 'stopped' during the extraordinary circumstance period and starts ticking again only when the period is over"). As a result, the Court agrees with the appellant that the extraordinary circumstance began on December 3, 2019, the day the Board issued its decision, and ended on May 23, 2020, the date of the veteran's death.

The Court acknowledges that, to warrant equitable tolling under the "stop-clock approach," a party ordinarily must demonstrate (1) due diligence during the extraordinary circumstance period, and (2) causation between the extraordinary circumstance and the failure to file an NOA during the period sought to be tolled. *See id.* at 1380-81. Here, there is no suggestion that the veteran exercised due diligence during the extraordinary circumstance period. But under the facts of this case, where the veteran's illness, as established above, rendered him incapable of handling his affairs during the extraordinary circumstance period, it would be illogical to require that he exercise due diligence during his incapacity. *See Barrett*, 363 F.3d at 1321 (holding that, to obtain the benefit of equitable tolling based on mental incompetence, "a veteran must show that the failure to file was the direct result of a mental illness that rendered him incapable of 'rational thought or deliberate decision making,' or 'incapable of handling [his] own affairs or unable to function [in]

___

[4] The Court expresses no opinion as to whether other circumstances may allow an accrued-benefits claimant to pursue a deceased veteran's appeal where no NOA is filed within 120 days after a final adverse Board decision.

society'" (alterations in original) (first quoting *Melendez-Arroyo v. Cutler-Hammer de P.R. Co.*, 273 F.3d 30, 37 (1st Cir. 2001); and then quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998))); *see id.* at 1320 ("It would be both ironic and inhumane to rigidly implement section 7266(a) because the condition preventing a veteran from timely filing is often the same illness for which compensation is sought."). As for the causation requirement, considering the evidence of record, the Court is satisfied that the veteran's terminal illness prevented him from filing an NOA. As noted above, the appellant's declaration shows that the veteran was unable to read and comprehend information while medicated and that he slept for most of the day.

The Court thus concludes that the veteran's time to file an NOA had not expired prior to his death because the extraordinary circumstances of his illness rendered him incapable of handling his affairs and prevented him from filing an NOA. Applying the stop-clock approach, as of May 23, 2020, there were 120 days remaining on the statutory period for a timely NOA to be filed.

E. Conclusion

Pursuant to the holding in *Demery*, the Court concludes that the appellant, as an eligible accrued-benefits claimant, has statutory and constitutional standing to bring this appeal because the veteran died during the time he was permitted to file an NOA. *See* 30 Vet.App. at 438. Further, pursuant to Rule 4, the appellant's NOA, which she filed 30 days after the extraordinary circumstance ended, will be treated as timely. *See* U.S. Vet. App. R. 4(a)(3)(B)(ii) (permitting an NOA to be treated as timely if equitable tolling is warranted).

After consideration of the parties' pleadings and oral argument, it is

ORDERED that the Secretary's August 17, 2020, motion to dismiss is denied. It is further

ORDERED that the Secretary, within 30 days after the date of this order, serve the record before the agency (RBA) on the appellant and file notice with the Court that the RBA has been served.

DATED: May 16, 2022                                        PER CURIAM.